IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

BOBBY DWAYNE WILLIAMS                                                                    PLAINTIFF

v.                       Civil No.  6:13-cv-06004

NURSE ALDRIDGE, Omega Technical
Violator Center; SERGEANT SHORT;
and WARDEN BROWN                                                                         DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by the Plaintiff, Bobby Dwayne Williams, under the provisions of 42 U.S.C. § 1983.  Plaintiff proceeds *pro se* and *in forma pauperis*.

Plaintiff is currently incarcerated at the Pine Bluff Unit of the Arkansas Department of Correction.  The alleged constitutional violations at issue in this case occurred while Plaintiff was incarcerated in the Omega Technical Violators Unit of the Arkansas Community Correction (ACC) located in Malvern, Arkansas.[1]

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2013), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.  Currently before me is a motion for summary judgment (ECF No. 50) filed by the separate Defendants Sergeant Short and Warden Brown (the ACC Defendants) and a motion for summary judgment (ECF No. 53) filed by separate Defendant Nurse Aldridge.  Plaintiff has responded to the motions (ECF Nos. 57 & 58) and various reply briefs have been filed (ECF

---

[1]Formerly the Arkansas Department of Community Correction.

Nos. 59-62).[2] The motions are ready for decision.

### 1. Background

Plaintiff was assigned to the Omega Unit beginning in December of 2012 for a period of ninety days. ACC Exhibit 1, Doc. 50-1 at pgs. 12-13. Medical care, at least at during the relevant time frame, was provided to ACC residents by Corizon, Inc. ACC Exs. 4 & 5. ACC employees were not involved in the delivery of medical services. Id. Amanda Aldridge works as a Licensed Practical Nurse (LPN) at the Omega Unit. Aldridge Exhibit B.

On January 1, 2013, Plaintiff was seen by an LPN for complaints of coughing, itchy throat, and headaches that he maintained were caused by his exposure to black mold at the Crawford County Detention Center. Aldridge Ex. D at pgs. 1-2; Aldridge Ex. F at pg. 2. Plaintiff was given an antihistamine and acetaminophen for five days. Id. He was told to follow up if he did not improve. Id.

That same day, Plaintiff was examined for complaints of a knot in the center of his chest that was painful. Aldridge Ex. D at pg. 3; Aldridge Ex. F at pg. 2. Plaintiff's records indicate that he had made this same complaint previously and it was determined no surgical procedure was necessary. Id. The Omega Unit physician, Dr. Ware, prescribed 600 mg. of Ibuprofen three times a day as needed for thirty days. Id.

On January 8th, Plaintiff was seen at sick call by an LPN for complaints of an ongoing sinus pressure headache, sores and blood in his nose, and sores in his throat. Aldridge Ex. D at pg. 4; Aldridge Ex. F at pg. 2. He was referred to a physician. Id.

---

[2] Plaintiff has submitted as part of Document 57 a "*Pro Se* Plaintiff Statement of Material Facts." Defendants object (ECF No. 60) to this statement of facts on the grounds it does not comply with either the Federal Rules of Civil Procedure or the Local Rules for the Eastern and Western Districts of Arkansas. Defendants maintain their facts should now be deemed admitted. There are very few disputed facts in this case. It is the application of the law to the facts that is in dispute. The Court will consider Document 57 to be part of Plaintiff's argument in opposition of the summary judgment motion.

Plaintiff was seen by Dr. Ware on January 10th and diagnosed with seasonal sinusitis and prescribed Loratadine[3] for sixty days. Aldridge Ex. D at pgs. 4;-5 Aldridge Ex. F at pg. 2. Blood tests were also ordered. Aldridge Ex. D at pg. 5.

On January 18, 2013, Plaintiff filed this case naming Aldridge and the Omega "Medical Staff" as Defendants. In the complaint, he alleged the medical staff were not doing their jobs properly. He states he had been "bleeding out [his] nose," and had a "big sore in my left nostril." He states that he had been prescribed Clorpheniramine[4] which dried his nose and made the condition worse.

On January 25, 2013, Plaintiff was seen by an LPN for complaints of an open sore on his left nostril. Aldridge Ex. D at pg. 5; Aldridge Ex. F at pgs. 2-3. She noted no active bleeding and that she was unable to visualize a sore in the nostril. Id. Plaintiff denied having any problems breathing out of his nose. Aldridge Ex. D at pg. 5. Plaintiff was prescribed triple antibiotic ointment and referred to a doctor to make sure there were no signs of staph infection. Id.

On January 31st, Plaintiff was seen by Dr. Ware. Aldridge Ex. D at pgs. 6-7; Aldridge Ex. F at pg. 3. Dr. Ware diagnosed the condition as a resolving staph infection and prescribed Loratadine, Ciprofloxacin,[5] and Bacitracin.[6] Id.

At his deposition, Plaintiff testified that on January 31, 2013, he was seen by the nurse due to complaints about a sore in his nose, allergies, and drainage he was experiencing. Id. at pg. 33.

---

[3] An antihistamine used to relieve the symptoms of hay fever or other allergies.
http://www.nlm.nih.gov/medlineplus/druginfo/meds/a697038.html (accessed on 1/26/2015).

[4] An antihistamine used to relieve red, itchy, watery eyes, sneezing, and an itchy nose or throat.
http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682543.html (accessed 1/26/2015).

[5] An antibiotic used to treat infections caused by bacteria. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a688016.html (accessed 1/25/2015).

[6] A topical antibiotic used to treat minor skin injuries.

The Nurse conferred with Dr. Ware and Plaintiff was prescribed medication. ACC Ex. 1. at pgs. 33-34, 40. Plaintiff received the prescribed medication. Id. at pgs. 33 & 40. He was prescribed a thirty day supply of Loratadine. Id.

On February 12th, Plaintiff was seen by an LPN for complaints of headaches, a small amount of blood when blowing his nose, a sore throat, and a burning in his lungs when coughing. Aldridge Ex. D at pg. 8; ACC Ex. 1 at pgs. 35 & 41. He complained that the medication He had been given was not working. Id. He was told to put in for sick call if he had a fever, green or yellow purulent sputum, or drainage from his nose, ear pain, dyspnea, or a persistent sore throat. Id.

In his deposition, Plaintiff indicates that this lawsuit concerns an incident occurring on February 14, 2013. ACC Ex. 1 at pg. 14. At the time, Plaintiff was assigned to an open barracks with approximately twenty other inmates. Id. at pg. 16.

On that day, at around 9:25 p.m., Plaintiff got Short's attention by knocking on the window. ACC Ex. 1 at pg. 16. Short pulled Plaintiff out of the barracks to see what the problem was. Id. at pg. 17. Plaintiff explained that he was having difficulty breathing and had been told by the "head nurse" that the next time he coughed up mucus or blew it out to show the nursing staff. Id. at pg. 17. Plaintiff testified that he had been exposed to mold at the Crawford County Detention Center. Id. at pg. 18.

Plaintiff asked Short if he could go to the nurse's station to "talk to her and show her what I had blown my nose to." Id. at pgs. 15-17. Plaintiff had a paper towel with "loud yellow mucus" with blood mixed in. Id. at pgs. 14 & 17. Plaintiff testified that Short told him to hang onto the paper towel and that he would go talk to the nurse. Id. at pg. 15. Short indicated Aldridge was on duty. Id. at pg. 18. No one came and checked on the Plaintiff. Id. at pg. 15. Plaintiff testified that he was unable to sleep. Id. Plaintiff believes that Aldridge should have come and checked on him

or given him something since he "couldn't breathe." Id. at 36.

On February 18th, Plaintiff was seen by an LPN. Aldridge Ex. D at 9; Aldridge Ex. F at 3. He complained of allergy problems and difficulty breathing when he slept. Id. Plaintiff was prescribed Chlorpheniramine[7] and acetaminophen for five days. Id. Plaintiff was advised to follow up in sick call after five days if he continued to have difficulty. Id.

On February 27th, Plaintiff filed a motion to amend his complaint. The motion was granted and in the amended complaint (ECF No. 10) Plaintiff named as Defendants Short, Warden Brown, and Aldridge. Plaintiff alleges that Defendants were "ignoring [his] medical need." Attached to the amended complaint is a document in which Plaintiff describes an incident occurring on February 14, 2013, where he showed Defendant Short a paper towel with yellow phlegm on it and told Short that he was having difficulty breathing. Short indicated he would let Aldridge know but Plaintiff asserts he did not receive medical treatment that day.

Plaintiff testified that the only time he was seen by Aldridge was after he filed this lawsuit. ACC Ex. 1 at pgs. 18 & 24. She drew his blood. Id. at pg. 19. Plaintiff named Aldridge as a Defendant because she is the nurse Short said he was going to talk to on February 14th. Id. at pg. 25. Plaintiff testified that Short failed to do his job properly because he ignored an emergency situation and did not obtain medical treatment for the Plaintiff. ACC Ex. 1 at pg. 30. Furthermore, when Plaintiff was sitting at the table holding onto the mucus in the towel, Plaintiff testified Short told him to get off the bench and go back and sit on his bed. Id. Plaintiff asserts that Short said he would come and check on the Plaintiff but that no one did. Id.

With respect to Warden Brown, Plaintiff testified he was suing her because she did not do

---

[7]This medication helps control the symptoms of cold or allergies. http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682543.html (accessed 1/27/2015).

a background check on Short to see if he was professional enough to do his job. ACC Ex. 1 at pg. 31.

Plaintiff testified that he filed a single grievance related to this lawsuit. ACC Ex. 1 at pg. 26. The grievance form is dated February 14, 2013. Doc. 36-1. In the area of the form for describing the problem, Plaintiff wrote:

> 9:25 p.m. I shown on a paper towel a loud yell mucus to Sgt. Short and told him it is hard for me to breathe that I was exposed to "black mold" in the County Jail. And he told me hold on to it he'll inform the Nurse Ms. Aldridge and here it is 11:00 p.m. and I haven't seen the nurse or Sgt. Short about it. I still have the paper towel.

Id. Plaintiff indicated the grievance was an emergency one because he couldn't sleep and it was difficult for him to breathe. Id.

Short's statement indicates he told the Plaintiff that he would need to fill out a sick call request and wait on a response from medical. Doc. 36-1 at pg. 2; see also ACC Ex. 4. Short also went to the medical department and spoke with Aldridge who told him that Plaintiff would have to fill out a medical slip. Id. Shortly after he submitted the grievance, Plaintiff indicates he was released. ACC Ex. 1 at pg. 28.

Dr. Robert Floss, Associate Regional Medical Director for Correct Care Solutions, oversees the administration of medical services to the units comprising the ADC and ACC. Aldridge Ex. F at pg. 1. Dr. Floss reviewed Plaintiff's clinical records and concluded that Plaintiff was regularly followed and appropriately treated. Id. at pg. 3. Dr. Floss's opinion was that Dr. Ware's diagnosis of seasonal sinusitis and resolving staph infection was correct and appropriate treatment was given. Id. at pgs. 3-4. Dr. Floss found no evidence in the records to suggest Plaintiff had an urgent or emergent medical need on the evening of February 14th. Id. at pg. 4. In Dr. Floss' professional judgment Plaintiff's treatment was appropriate and consistent with sound medical practices. Id.

**2. Applicable Standard**

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." National Bank of Commerce v. Dow Chemical Co., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." National Bank, 165 F.3d at 607 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." Id. (citing, Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985)).

**3. Arguments of the Parties**

The ACC Defendants maintain they are entitled to summary judgment in their favor for five reasons. First, they maintain the Plaintiff failed to exhaust his administrative remedies prior to filing suit. Second, they argue that neither one of them exhibited deliberate indifference towards the Plaintiff's serious medical needs. Third, they maintain Plaintiff's claim against Warden Brown is subject to dismissal as it is based upon the theory of respondeat superior. Fourth, with respect to the individual capacity claims, the ACC Defendants contend they are entitled to qualified immunity.

Finally, they maintain that a claim for damages against them in their official capacities is barred by the doctrine of sovereign immunity.

Separate Defendant Aldridge first argues that Plaintiff did not exhaust his administrative remedies prior to filing suit and that this case should be dismissed on that basis. Second, Aldridge maintains Plaintiff received appropriate care for his complaints and there is no evidence of deliberate indifference on her part.

Plaintiff argues that Defendants were deliberately indifferent to his serious medical needs when they failed to provide him with any medical attention on February 14th. He points out that Short and Aldridge were aware of the situation but did nothing. With respect to Warden Brown, Plaintiff argues she failed to ensure that Short had enough background to recognize an emergency situation and obtain medical care for him.

### 4.  Discussion

### (A).  Exhaustion of Administrative Remedies

Because a finding that Plaintiff failed to exhaust his administrative remedies would require dismissal of this lawsuit, I will address this argument first. The ACC Defendants point out that it has a written grievance procedure that sets forth a two-step process. ACC Ex. 2 at pgs. 3-4. A resident is instructed to first attempt a verbal resolution of any complaints. If this informal method does not resolve the problem, residents are instructed to submit a formal written grievance, using a grievance form, within five days of the occurrence. Id. A resident may declare an emergency situation if he "believes that by observing the regular time limits for disposition he [] would be subject to a substantial risk of personal injury or other serious and irreparable harm." Id. at pg. 3. In such cases, the grievance form is to be delivered without undue delay to the grievance officer or

designee. Id. In ordinary circumstances, the grievance officer has thirty days to respond in writing. Id.

Step two provides an appeal process if the resident is not satisfied with the grievance officer's response. ACC Ex. 2 at pgs. 3-4. The decision can be appealed first to the Center Supervisor and within five days of the decision to the Deputy Director for Residential Services. Id. The decision of the Deputy Director is final. Id. at pg. 4.

In the case of grievances addressing medical complaints, Aldridge indicates a three-step process is followed. Aldridge Ex. A at pgs. 1-3. The grievances are forwarded to the appropriate medical personnel for investigation. Aldridge Exs. A &B. In step one, if the grievance cannot be resolved informally, the Health Services Administrator reviews the grievance and provides a written response. Aldridge Ex. A at pg. 3. In step two the grievance is delivered to the Warden/Center Supervisor for review and forwarding to the Health Services Regional Manager. Aldridge Ex. A at pg. 3. The Regional Manager provides a written response to the Warden/Center Supervisor who reviews and endorses it. Id. Step three provides for an appeal to the Deputy Director for Residential Services. Id. at pgs. 3-4.

Plaintiff submitted only one formal grievance between January 1, 2010, and May 1, 2013. Aldridge Ex. B. The grievance was dated February 14, 2013, and assigned a file number of OM-13-00008. Aldridge Ex. C. The final step in the process, review by the Deputy Director of Residential Services, was completed on April 25, 2013. Aldridge Ex. B.

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), mandates exhaustion of available administrative remedies before an inmate files suit. Section 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other

Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Exhaustion is mandatory. Porter v. Nussle, 534 U.S. 516, 524-25 (2002). In Jones v. Bock, 549 U.S. 199 (2007), the Supreme Court concluded that "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." Id. at 218 (internal quotation marks and citation omitted). The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Id. "[F]ailure to exhaust available administrative remedies is an affirmative defense, not a matter of subject matter jurisdiction." Lenz v. Wade, 490 F.3d 991, 993 n. 2 (8th Cir. 2007).

The Supreme Court in Booth v. Churner, 532 U.S. 731, 738-39 (2001) held that "exhaustion is required where administrative remedies are available even if the available administrative remedies do not provide the precise, or full, relief sought." Walker v. Maschner, 270 F.3d 573, 577 (8th Cir. 2001). The exhaustion requirement applies to "all inmate suits about prison life." Porter, 534 U.S. at 532. This is true whether the claims "involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Id.

In Williams v. Norris, 176 F.3d 1089, 1090 (8th Cir. 1999), the Court held that a claim could proceed because it was exhausted at the time the Court ruled. In Johnson v. Jones, 340 F.3d 624 (8th Cir. 2003), the Court was faced with this issue and concluded that in light of the Supreme Court holdings in Booth and Porter, the holding in Williams was "no longer tenable." Johnson, 340 F.3d at 627. The Eighth Circuit stated that:

> [u]nder the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court. Thus, in considering motions to dismiss for failure to exhaust under section 1997e(a), the district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred. If exhaustion was not completed at the time of filing, dismissal is mandatory.

Id.

The undisputed evidence establishes that the Plaintiff did not submit a single grievance about his medical care prior to filing this case. Dismissal is therefore mandatory.

**(B). Denial of Medical Care**

To provide a full record for review, I will address the merits of Plaintiff's denial of medical care claim. The Eighth Amendment makes it unconstitutional for prison officials to be deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). "Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished." Crooks v. Nix, 872 F.2d 800, 804 (8th Cir. 1999)(citation omitted).

To state a denial of medical care claim, the Plaintiff must establish both an objective and subjective component. "The objective component requires a plaintiff to demonstrate an objectively serious medical need. The subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need." McRaven v. Sanders, 577 F.3d 974, 980 (8th Cir. 2009).

Short is entitled to summary judgment. Plaintiff does not assert Short failed to pass Plaintiff's complaints onto nursing staff. The fact that Short did not speak to the Plaintiff after consulting with the nurse amounts at most to a failure to communicate. Short did nothing to delay Plaintiff's medical treatment. There is no basis on which Short may be found to have been

deliberately indifferent to Plaintiff's serious medical needs.

Warden Brown is entitled to summary judgment.  Liability under § 1983 requires some personal or direct involvement in the alleged unconstitutional action.  See e.g., Ripon v. Ales, 21 F.3d 805, 808-09 (8th Cir. 1994).  There is no allegation that the Warden was: involved in the day to day operations of the Omega Unit; involved in the provision of medical care to inmates; or personally present, or consulted, at any point about the provision of Plaintiff's medical care.  See Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997)(no evidence that the defendants were doctors or were personally involved in making medical decisions about treatment); Mark v. Nix, 983 F.2d 138, 139-40 (8th Cir. 1993)(section 1983 liability requires some personal involvement or responsibility).  General responsibility for supervising the Omega Unit is insufficient to establish personal involvement.  Reynolds v. Dormice, 636 F.3d 976, 981 (8th Cir. 2011).

A claim for monetary damages against Brown and Short in their official capacity is the equivalent of a suit against a state agency and Eleventh Amendment immunity precludes this claim.  See Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).  Defendants are therefore also entitled to summary judgment on the official capacity claims.

Likewise, Aldridge is entitled to judgment in her favor.  Plaintiff claims Aldridge exhibited deliberate indifference to his serious medical needs when she failed to see him on February 14th after he complained of having difficulty breathing.[8]  The medical records indicate Plaintiff was receiving medical treatment.  The records indicate he was seen multiple times by medical personnel prior to February 14th due to his allergies and a sore in his nose.  He had been prescribed a variety of

---

[8] Plaintiff maintains Defendants have failed to produce the camera footage from February 14th at 9:25 p.m. ECF No. 58 at pg. 1. Plaintiff states this would show that when he blew his nose there was yellow mucus mixed with blood. Id.  He also maintains it would show he was having trouble breathing. Id. In response, to a motion to subpoena camera footage, Defendants indicated no such footage exists. (ECF Nos. 34, 35 & 40).  The motion was denied.  (ECF No. 40).

medication.  Further, the medical records have been reviewed by Dr. Floss who concluded that the course of treatment was appropriate and within professional standards.

Additionally, "[a] prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that [these] delays adversely affected his prognosis."  Holden v. Hirner, 663 F.3d 336, 342 (8th Cir. 2011)(internal quotation marks and citation omitted).   Plaintiff has presented no evidence that any delay in treatment adversely impacted his prognosis.

### 5.  Conclusion

For the reasons stated, I recommend that the Defendants' Motions for Summary Judgment (ECF Nos. 50 & 53) be **GRANTED** and this case **DISMISSED** with prejudice.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 28th day of January 2015.

                    /s/ Barry A. Bryant  
                    HON. BARRY A. BRYANT  
                    UNITED STATES MAGISTRATE JUDGE